**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ALLEN CUNNINGHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 12-00538-KD-B** |
| | ) | |
| **AUTOZONERS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This action is before the Court on the motion for summary judgment, brief in support of

the motion, suggested determinations of undisputed facts and conclusions of law, and evidentiary

material filed by the defendant AutoZoners, LLC (docs. 28-29), the response in opposition filed

by plaintiff Allen Cunningham and affidavit in support (docs. 30-31) and AutoZoners' reply

(doc. 32). Upon consideration, and for the reasons stated herein, AutoZoners' motion is

**GRANTED**.

**I. Procedural History**

After filing two charges against AutoZoners with the Equal Employment Opportunity

Commission and receipt of his notice of right to sue letters, Cunningham filed his complaint on

August 27, 2012 alleging sexual harassment and retaliation for complaining about the sexual

harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

(Title VII), as amended by the Civil Rights Act of 1991 (doc. 1).  On November 13, 2012,

Cunningham filed an amended complaint that contained the same claims as his previous

complaint (doc. 10).  AutoZoners filed an answer and affirmative defenses on January 14, 2013

(doc. 12).  AutoZoners denied the majority of the allegations and admitted only certain

allegations related to Cunningham's employment, AutoZoners' employment decisions, the fact that Cunningham filed a complaint of the alleged sexual harassment, and that he filed the two charges with the EEOC (doc. 12). In September 2013, Cunningham voluntarily dismissed count one for sexual harassment (docs. 25, 27).

## II. Findings of Fact[1]

In July 2009,[2] AutoZoners hired Cunningham as a part-time salesperson or "Customer Service Representative" (CSR) at its Monroeville, Alabama store. He was paid at the rate of $7.50 per hour. At that time, he had no experience in retail sales, automotive sales, or management, and all of his most recent previous jobs had been part-time.[3] His job duties were to set up planograms, look up automotive parts, cashier and work with the customers. LaTonya Madison was the Store Manthaager. Robert Wachman was the District Manager. Fred McCall was a full-time Part Sales Manager (PSM) and Michael Bradford and Jesse Guy were part-time

---

[1] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [the Plaintiff,] the nonmoving party." *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).

[2] Cunningham asserts that he was hired on July 9, 2009 (doc. 31-1). AutoZoners asserts that he was hired on July 21, 2009 (doc. 28-1, p. 2).

[3] Cunningham listed two jobs on his application: Utility worker for Georgia Pacific and before that, a laborer for a masonry company (doc. 28-3, p. 132, Cunningham's Application, Deposition Exhibit 1). Cunningham testified that the dates of employment were not accurate and that he worked from 2005 to 2006 at Georgia Pacific and worked for the masonry company in 2003 (*Id*. p. 7-8). He did not list any employment for 2008 through 2009, but testified that he worked for Multi-Staffing, a temp agency, for two years (*Id*. p. 39). He also testified that he had a seasonal job at Sam's Club through a temp service where he "worked around a little bit of retail" (doc. 28-3, p. 4).

Also, on the application, Cunningham stated that he had no "previous management experience" and no "previous retail experience" but "1-2 years" of "previous automotive experience" (*Id*. p. 131). At deposition, he testified that he had "worked around" a race car that belonged to someone he knew, but had no formal education such as auto classes (*Id*., p. 3-6).

PSMs. John Reid was a full-time salesperson. Reid was hired for full time work because of his prior experience but typically sales representatives were part-time employees like Cunningham (doc. 28-3, p. 45-46, Cunningham Deposition).

In general, AutoZoners allots a set number of work hours for each store based on corporate projections and the store's sales history. The Store Managers schedule the work hours for all the employees. As to the part-time employees, their hours are scheduled after consideration of the total number of hours allotted to the store, the hours allotted for the full-time employees, the hours remaining for part-time employees, the hours the store is open, customer traffic and the availability of part-time employees (doc. 28-4, p. 3-4, Wachman Deposition). Also, Store Managers, such as Madison, do not have authority to promote an employee or give them a raise (doc. 28-3, p. 49, Cunningham Deposition; doc. 28-4, p. 27, Wachman Deposition).

At the end of August 2009, Madison told Cunningham that he "would be eligible for a full time PSM position when the next position became available" and that Wachman liked his work and "was going to give" him a raise (doc. 30-1, p.1, Cunningham Affidavit). Madison spoke with Wachman and then told Cunningham that Wachman "would get back with her on it." (doc. 28-3, p. 77-78).

In October 2009, Cunningham reported to Wachman that Madison had begun to sexually harass him in September 2009. Wachman asked Cunningham to fax a statement containing some of the statements that Madison had made to him. Cunningham sent his statement on October 16, 2009 and then Wachman and Karen Shakerin, AutoZoners' Regional Human Resources Manager, investigated the allegations. Madison was disciplined and AutoZoners provided additional training to its employees. Cunningham also stated that after he was interviewed about the harassment, he asked Shakerin when he would be eligible for a raise and she answered that

he would be eligible either when he became full time or if Wachman saw fit for him to have a raise (doc. 30-1, Cunningham Affidavit).

Thereafter, neither Madison nor Wachman spoke to Cunningham about the management position. Madison no longer harassed Cunningham and she stepped down as Store Manager to a PSM position. Lee Rogers transferred from the store manager position at another AutoZone location to become Madison's interim replacement. Soon thereafter, in January 2010, Rogers became the Store Manager.

In February 2010, PSM McCall left the store and in March 2010, PSM Bradford, left the store. Wachman was responsible for filling the PSM positions.[4] Wachman did not consider Cunningham for either position because he had "very little parts experience" and "no management experience" (doc. 28-4, p. 11,Wachman Deposition). At that time, Cunningham had worked part-time at the store for approximately eight months.

Wachman hired Jackie Gorum in February 2010 as a full-time PSM and hired Jamerson Nelson in March 2010 as a part-time PSM. Wachman testified that Nelson "had some automotive experience" and "some management experience" and had "owned his own business" (Doc. 28-4, p. 21, 22, Wachman Deposition). Wachman stated that Gorum "had more than ten years of management experience . . . had been a shipping and warehouse manager . . . and had management experience including writing schedules and pulling order, conducting training, and making personnel decisions" (doc. 28-5, Wachman Declaration).

---

[4] Generally, the store managers conduct the interview and Wachman would "probably do a second" interview (doc. 28-4, p. 9-10). Although the AutoZoners' pledge indicated that it would try to hire from within, Wachman had lost two full-time management employees; thus, he wanted "to find the most qualified people, period" (*Id.*, p. 11). Wachman testified that Rogers helped with filling the positions (*Id.*, p. 12).

In May 2010, Gorum transferred to another store; thus, a full-time PSM position came open. In June or early July 2010, Cunningham called Karen Shakerin, the Regional Human Resources Manager, "and asked why wasn't [he] available for one of the jobs that had been open for management" (doc. 28-3, p. 92-93, Cunningham Deposition).[5] Shakerin told Cunningham that Wachman "would have to interview" him for the position and that he "was qualified for the position" (doc. 30-1, Cunningham Affidavit, p. 2-3).

Around July 19, 2010, Wachman interviewed Cunningham. Wachman determined that Cunningham needed additional training to become a PSM. Primarily this was because he did not know about certain company procedures. Specifically, Cunningham did not know the procedures for answering the phone and greeting customers, and was not familiar with the company's values and pledge, or culture and salesmanship, which was information posted in the store and on an information board (doc. 28-4, p. 14-15, 28, Wachman Deposition). Because of this, Wachman questioned whether Cunningham could lead a team as a PSM (doc. 28-4, p. 15).

Wachman testified that he offered Cunningham a full-time senior sales position, which is a position for employees with automotive experience but no management experience.[6] Wachman offered the position to provide Cunningham with additional training "to get him up to speed" on company policies and procedures so that he could advance to a PSM position (doc. 28-4, p. 14-15, Wachman Deposition). Commensurate with the full-time senior sales position,

---

[5] Cunningham also thought there was another open PSM position, but he did not know whether it was a full-time or part-time position (doc. 28-3, p. 92-93) ("I guess that's the one Thomas Guy had left from").

[6] Wachman explained that the starting point was a part-time sales position, "[t]hen you go to full-time sales. Then you can be a part-time senior sales or . . . a full-time senior sales. Those two positions would have automotive experience attached to them" (doc. 28-4, Wachman Deposition, p. 43).

Cunningham was given a raise to $8.25 per hour (doc. 28-4, Wachman Deposition, p. 44, 53) (". . . the Status change had been made. He got a raise."). Wachman also processed a "Status Change Form Entry" showing Cunningham's "Job Status Change: Pt to Full" with the "Job Title: Sr. Sales" effective July 25, 2010 (doc. 28-3, p. 158, Defendant's Exhibit 7 to Cunningham's Deposition). The "Reason for Change" was identified as "Promotion." (*Id.*)

Wachman testified that after his interview, Cunningham went on vacation and upon his return, told Store Manager Rogers that he had decided not to take the full time senior sales position because he was going back to school (doc. 28-4, p. 20-21, Wachman Deposition). Rogers called Wachman and told him about Cunningham's decision. (*Id.*) Wachman left the raise in place despite the change in status (doc. 28-4, p. 22-23, Wachman Deposition). [7]

Despite documentation to a senior sales position, Cunningham disputes that he was promoted to a full-time senior sales position in July 2010, although he acknowledges he was given a raise in July 2010 (doc. 28-3, p. 93-94, 97-104, Cunningham Deposition).[8] Cunningham also denies that when he returned from vacation in July 2010, he told Rogers that he wanted to stay part time (doc. 28-3, p. 104).

Instead, Cunningham limited his work hours after it became apparent he would not be promoted to PSM (doc. 28-3, p. 105-106). Specifically, Wachman said he would move Cunningham to a full-time PSM position after he finished the necessary classes (doc. 28-3, p. 94,

---

[7] Wachman changed PSM Jamerson Nelson to full-time status in August 2010 (doc. 28-4, p. 20, Wachman Deposition).

[8] Cunningham testified: "I was never told I was a full-time position"; I was never full time at the store" (doc. 28-3, p. 102). He explained that "in order to be a full time position, I mean, I would have had to move up to a PSM stance, at least a gray shirt, because there was no history of but one full time red shirt in the store" (doc. 28-3, p. 97). A "red shirt" is a non-management employee and at the time there was one full-time "red shirt" employee at the Monroeville store.

103, Cunningham Deposition). Cunningham asked his Store Manager Rogers about when classes would start and Rogers contacted Wachman, but Rogers never got back to Cunningham (doc. 28-3, p. 95, 102, 113, Cunningham Deposition, p. 158-159). Cunningham testified that approximately a "month or so" after his interview with Wachman and after Rogers "kept trying to get" Wachman to send Cunningham to the classes, and after Wachman "never did come through", Cunningham told Rogers that he "couldn't work weekends" (doc. 28-3, p. 113, Cunningham Deposition). Cunningham admitted that he understood that he could not be a manager unless he could work on week-ends (doc. 28-3, p. 110-111, Cunningham Deposition).

Cunningham's time records indicate that he continued to work part-time during July 2010, after he returned from vacation and never worked full time (doc. 28-6, p. 7-10). The records show that he worked 5.27 hours on July 19, 2010, and did not work again until the week of August 1 through 5, 2010, when he worked 22.33 hours (doc. 28-6, p. 8). Cunningham worked Tuesday, Wednesday and Thursday.

In early September 2010, Matt Rowell was hired as a part-time PSM (doc. 28-3, p. 157, Cunningham Deposition Defendant's Exhibit 7, EEOC Charge). Cunningham understood that Rowell had a lot of experience (doc. 28-3, p. 91, Cunningham Deposition).

On September 22, 2010, Cunningham was arrested for distribution of drugs (doc. 28-3, p. 108, Cunningham Deposition).[9] The day before, on September 21, 2010, Cunningham signed his first EEOC charge of discrimination. He alleged sexual harassment, hostile environment sexual harassment, and retaliation. In addition to the allegations regarding Madison's actions in August 2009, Cunningham alleged that he had not been given the PSM positions that came

---

[9] Cunningham testified that Rogers was unaware of the arrest "until he read it in the newspaper." (Doc. 28-3, p. 110, Cunningham Deposition)

available in February and March 2010 because he had made the internal complaint about sexual harassment in September 2009 (*Id*.).

The next month, on October 24, 2010, Cunningham was given another raise in pay. The "Reason" was "Reward Performance MGMT". Then on October 26, 2010, Cunningham signed his second EEOC charge of discrimination. He alleged that Store Manager Rogers had reduced his part-time hours for three weeks starting October 17, 2010, because Rogers found out that he had filed the charge of discrimination.

For the week beginning October 11, 2010, Cunningham worked for 14.55 hours, and the week beginning October 19, 2010), he worked 13.33 hours. The week beginning October 26, 2010, he worked 9.26 hours, and the week beginning November 3, 2010, he worked 10.46 hours (doc. 30-1, doc. 28-6, p. 7-8, Exhibit D, summary of hours). For the next three pay periods, Cunningham worked between 12.18 and 22.53 hours (doc. 28-6, p. 8). For the remainder of 2010, his hours ranged between 19.22 and 23.10, but for the week of December 28, 2010 when he worked 16.03 hours (*Id.*).

The summary of hours for the five weeks prior to the alleged reduction by Rogers shows that Cunningham worked 15.56 hours the week of October 4, 2010, 17.03 hours the week of September 28, 2010, 6.46 for the week of September 20, 2010, 17.09 for the week of September 13, 2010, and 19.02 the week of September 7, 2010 (*Id.*).[10] Looking farther back from August 2010 to June 2010, his hours ranged from 8.10 the week of June 7, 2010 to 25.50 the week of July 6, 2010 (*Id.*) (excluding the hours of 5.27 on July 19, 2010 which were scheduled

---

[10] In his complaint, Cunningham alleged that he had been "getting low twenties (20's) to thirty (30) hours a week." (Doc. 10, p. 4, ¶ 12) AutoZoners' records do not support his allegation and he has not presented any evidence to the contrary.

contemporaneously with Cunningham's vacation) (*Id.*)[11]

In June 2011, Cunningham was investigated and interviewed regarding an allegation of "insubordination, inappropriate comments, poor job performance". He was found to have committed a "Serious Violation" for "Insubordination" (doc. 28-3, p. 162-170, Defendant's Exhibits 12-13, Cunningham Deposition). The "Suggestion for Improvement" was to "Follow all policies and procedures. Follow management instructions." (*Id*. p. 170)

In July 2011, Cunningham was investigated and interviewed regarding an allegation that he violated the employee discount policy. He was found to have committed a "Serious Violation" for "failure to comply with AutoZone Policy" (doc. 28-3, p. 171- 176, Defendant's Exhibits 14-15, Cunningham Deposition). The "Suggestion for Improvement" was to "Follow AutoZone's Company Policies." (*Id*. p. 176)

In October 2011, Cunningham was given a favorable evaluation and another raise (doc. 28-6, p. 5-6, Exhibit 1, Shakerin Declaration). In the spring of 2012, then Store Manager Eddie Kay spoke with Cunningham about a promotion to a management position (doc. 28-6, p. 13, Exhibit 5 to Exhibit D, Kay's Statement dated April 19, 2012). Cunningham declined the position (*Id*.). In May of 2012, he voluntarily quit (doc. 28-3, p. 96, 125-126, Cunningham Deposition).

### III. Conclusions of Law

### A. Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine

---

[11] Looking back to January 2010: In May, his hours ranged from 16.27 to 20.45; in April, his hours ranged from 16.29 to 23.31; in March, his hours ranged from 11.41 to 31.29; in February, his hours ranged from 16.01 to 32.20; and in January, his hours ranged from 14.12 to 33.28 (doc. 28-6, Exhibit D, p. 7-8). In 2009, his hours ranged from 24.28 to 43.47 (*Id.,* p. 7).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

AutoZoners, as the party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once AutoZoners has satisfied its responsibility, the burden shifts to Cunningham, as the non-movant, to show the existence of a genuine issue of material fact. *Id.* "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment

if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

**B. Statement of the law**

Title VII's anti-retaliation provision prohibits AutoZoners from retaliating against Cunningham "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Because Cunningham's retaliation claim is based on circumstantial evidence, he may rely on the "burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 93 S. Ct. 1817 (1973)" to prove his case. *Ramirez v. Bausch & Lomb, Inc.*, - - - Fed. Appx. - - -, 2013 WL 5716823, *1 (11th Cir. 2013); *Reeve v. Secretary, Dept. of Homeland Sec.*, - - - Fed. Appx. - - -,

2013 WL 5539605, *1, n.2 (11th Cir. 2013). Alternatively, he may present "circumstantial evidence that creates a triable issue concerning [AutoZoner's] discriminatory intent." *Edmond v. University of Miami*, 441 Fed. Appx. 721, 723 (11th Cir. 2011) (citing *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir.2011) (stating that "the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case")). Additionally, the Supreme Court recently decided that Title VII retaliation claims require proof that intentional retaliation was the "but-for" cause of the challenged employment action." *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (June 24, 2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. at 2533.

Under the *McDonnell Douglas* framework, Cunningham "must first establish a *prima facie* case, which creates a presumption of unlawful discrimination against" him. *Ramirez,* 2013 WL 5716823, at *1. In order to establish a *prima facie* case of retaliation under Title VII, Cunningham must show "that (1) []he engaged in statutorily protected activity, (2) []he suffered a materially adverse employment action, and (3) there is a causal relationship between the two events." *Peters v. HealthSouth of Dothan, Inc.*, 2013 WL 5567734, 3 (11th Cir. 2013) (citation omitted); *Ramirez,* 2013 WL 5716823, at *1. In this context, a "materially adverse action" means one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F. 3d 961, 973-974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006)); *Rodriguez v. Secretary, U.S. Dept. of Homeland Sec.*, 518 Fed. Appx. 653, 655 (11th Cir. 2013).

The causal relationship has been construed broadly such that Cunningham "merely has to

prove that the protected activity and the adverse action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). This element may be met if Cunningham shows that the decision-maker had knowledge of his protected activity and there was a "close temporal proximity" between his protected activity and the adverse action. *Id.*

If Cunningham makes his *prima facie* case, then the burden of production shifts to AutoZoners to "articulate a legitimate, non-retaliatory reason for the challenged employment action." *Rodriguez v. Secretary, U.S. Dept. of Homeland Sec.*, 518 Fed. Appx. 653, 655 (11th Cir. 2013); *Gardner v. Aviagen*, 454 Fed. Appx. 724, 728 (11th Cir. 2011). If AutoZoners makes such a showing, "the presumption of discrimination is rebutted". *Gardner*, 454 Fed. Appx. at 728. (citations omitted). Cunningham must then show by a preponderance of the evidence that AutoZoners' "reason is pretextual." *Hill v. Wal–Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). On motion for summary judgment, Cunningham must "proffer sufficient evidence to create a genuine issue of material fact" that the articulated reasons are pretextual. *Reeve*, 2013 WL 5539605, at *1, n.2 (citing *Crawford v. Carroll,* 529 F.3d 961, 976 (11th Cir. 2008)). To do this, he "must meet the reason proffered [by his employer] head on and rebut it." *Putnam v. Secretary, Dept. of Veterans Affairs*, 510 Fed. Appx. 827, 831(11th Cir. 2013). Cunningham "must show both that the employer's stated reasons were false and that discrimination or retaliation was the real reason for the action." *Reeve*, 2013 WL 5539605, at *1, n.2 (citations omitted).

### C. Analysis

In his complaint, Cunningham alleges that after he made the internal complaint of sexual harassment and after he filed his charge with the EEOC, he was not promoted to a full time position, employees or persons outside the company who were less qualified than him were hired

for the full time positions, and he was denied a raise. He also alleges that after he filed his first charge with the EEOC, his part-time hours were reduced in retaliation. (Doc. 10)

There is no dispute that Cunningham engaged in statutorily protected activity. *See Tarmas v. Sec'y of Navy,* 433 Fed. Appx. 754, 762 (11th Cir. 2011) ("There is no dispute that the filing of a claim with the EEOC is a 'statutorily protected activity.'"); *Walton-Horton v. Hyundai of Alabama*, 402 Fed. Appx. 405, 408 (11th Cir. 2010) ("Statutorily protected expression includes internal complaints of discrimination to superiors, complaints lodged with the Equal Employment Opportunity Commission, and discrimination-based lawsuits.").

### 1) Retaliatory failure to promote in February and March 2010

Cunningham has failed to make the third element of his *prima facie* case, that the alleged retaliatory conduct has a causal connection to the protected activity. Cunningham filed his internal complaint of sexual harassment in October 2009. The next PSM position came open in February 2010 when McCall left, and then another position in March 2010, when Bradford left. Cunningham was not hired for either position. Approximately four months passed between Cunningham's internal complaint and Wachman's decision not to promote Cunningham to the next available PSM position in February 2010. *Walker v. Secretary, U.S. Dept. of Air Force*, 518 Fed. Appx. 626, 628 (11th Cir. 2013) ("We have held, however, that 'in the absence of other evidence tending to show causation,' a three-to-four month time gap between the protected conduct and the adverse employment action is insufficient to establish causation on its own."); *Coar v. Pemco Aeroplex, Inc.*, 372 Fed. Appx. 1, 5 (11th Cir. 2010) ("We have held that even a three-month period between protected activity and an adverse employment action, standing alone, does not allow a reasonable inference of a causal relationship between the protected expression and the adverse action.") (internal quotations and citation omitted); *Thomas v.*

*CVS/Pharmacy*, 336 Fed. Appx. 913, 915-916 (11th Cir. 2009) ("Three and a half months [between the filing of an EEOC charge and the December promotion] is too long a delay to support a causation finding absent other evidence of retaliatory intent[.]").

AutoZoners articulated its legitimate, non-retaliatory reasons for not promoting Cunningham to either PSM position: Gorum and Nelson were more qualified. AutoZoners met its burden of production by way of Wachman's testimony that Cunningham "was simply not qualified for the position" because he had no prior management experience and no basic knowledge AutoZoners' policies and procedures. Wachman also testified that Gorum and Nelson were more qualified because they had the requisite automotive and management experience. (Doc. 28-2, p. 17). *Kidd v. Mando American Corp.*, 731 F.3d 1196, 1205 n.14 (11th Cir. 2013) ("[T]he employer's burden is not one of persuasion but a burden of *production . . .*'") (citation omitted) (italics in original). To rebut these reasons as a pretext for retaliation, Cunningham "must show both that (1) the defendant's proffered reason is so weak or inconsistent as to be 'unworthy of credence' and, (2) that the real reason is unlawful discrimination." *Springer v. Convergys Customer Mgmt. Group Inc.,* 509 F.3d 1344, 1348–49 (11th Cir. 2007).

In rebuttal, Cunningham asserts that because he worked at the Monroeville AutoZone store part-time for eight months, he was more qualified than Gorum and Nelson who were hired from outside the store. He also asserts that his Store Manager LaTonya Madison and Karen Shakerin, AutoZoners' Human Resources Manager, had told him that he was qualified for a management position and that their statements are an admission by AutoZoners that he was qualified.[12] As to his work-related qualifications for the PSM positions, Cunningham testified

---

[12]    Shakerin allegedly made this statement to Cunningham in July 2010, which was several months after the decision to hire Gorum and Nelson. Shakerin did not tell Cunningham (Continued)

that his most recent employment before working for AutoZone was through a temporary service where he held no management position and gained limited retail experience. He also testified that his prior automotive experience was working on a friend's race car. *See supra* footnote 3.

For purposes of this summary judgment, the Court assumes that Madison's and Shakerin's statements "could be reduced to admissible evidence at trial or reduced to an admissible form" because they were made regarding a matter within the scope of their employment as managers. *Jones v. UPS Ground Freight*, 683 F. 3d 1283, 1293-1294 (11th Cir. 2012) ("'a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.'") (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.1999)); *Kidd*, 731 F. 3d at 1208 (discussing a statement made by a human resources director and explaining that Rule 801(d)(2)(D) provides that a statement is not hearsay if it "is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" and that an employees' statement may also be admissible as the statement of a party opponent). However, their statements and Cunningham's self-serving evaluation as to his qualifications, fail to rebut as pretext, the decision made by AutoZoners. In the context of a failure to promote, Cunningham cannot rebut the articulated reasons as "pretext by simply arguing or even by showing that []he was better qualified than the person who received the position []he coveted." *Kidd,* 731 F.3d at 1205-1206 (citations omitted). He "must show that the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no

that he was qualified for these positions.

reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id*. (internal quotation marks omitted).

However, the undisputed evidence shows that Gorum and Nelson were more qualified. Wachman testified that Nelson "had some automotive experience" and "some management experience" and had "owned his own business" (Doc. 28-4, p. 21, 22, Wachman Deposition). Wachman stated that Gorum "had more than ten years of management experience . . . had been a shipping and warehouse manager . . . and had management experience including writing schedules and pulling order, conducting training, and making personnel decisions" (doc. 28-5, Wachman Declaration). Wachman also testified that he did not consider Cunningham for either position because he was not qualified because he had "very little parts experience" and "no management experience" (doc. 28-4, p. 11, Wachman Deposition). Additionally, and importantly, although AutoZoners' policies indicated that it would try to hire from within, Wachman had lost two full-time management employees. Therefore, he wanted "to find the most qualified people, period" (*Id*., p. 11).[13]

Overall, Cunningham's proffer of evidence does nothing more than challenge Wachman's decision. However, the Court does not "act as a super-personnel department that reexamines an entity's business decisions; rather, we limit our inquiry to whether the employer gave an honest explanation of its behavior." *Thomas v. CVS/Pharmacy,* 336 Fed. Appx. 913, 914 (11th Cir. 2009) (citation and internal quotations omitted). Thus, Cunningham has failed to

---

[13] Wachman testified that he met with Cunningham on July 19, 2010, and "wanted to see where [Cunningham] was at . . . how far he was" (doc. 28-4, p. 14). Upon questioning, he found that Cunningham "didn't have a clue" "about basic AutoZone salesmanship or culture", didn't "know how to answer the phone at AutoZone" or "how to greet a customer" (doc 28-4, p. 15). This lack of knowledge caused Wachman to question whether Cunningham could lead a team as a PSM. (*Id*).

produce "sufficient evidence to create a genuine issue of material fact" that AutoZoners' articulated reasons are a pretext for retaliation. *Reeve*, 2013 WL 5539605, at *1, n.2 (citation omitted). *See Rodriguez v. Secretary, U.S. Dept. of Homeland Sec.*, 518 Fed. Appx. 653, 655-656 (11th Cir. 2013) (". . . Rodriguez did not establish that TSA's legitimate, nondiscriminatory reason for not promoting him to the STSO position was a pretext for retaliation. Rodriguez argues that there is more than enough evidence to show that he did not truly lack the knowledge, training, qualifications, initiative and other traits needed for a supervisory position. The undisputed evidence, however, is that the successful candidates for the STSO position all had higher combined matrix and interview scores—the sole criteria TSA utilized in the STSO promotion process."); *see also, Thomas v. CVS/Pharmacy*, 336 Fed. Appx. 913, 915 (11th Cir. 2009) (finding that Thomas' argument that "he was employed by CVS for a longer period of time than any of the promoted employees and that he alone was required to finish the company training procedures before being promoted" and his argument that the court should "reexamine CVS's business decision to rely on factors other than tenure with the company in awarding promotions" were not sufficient to rebut CVS's legitimate, nondiscriminatory reason for the promotions which were based on the other employees' "combination of prior management experience, proven communication and leadership skills, recommendations by supervisors, lack of negative performance evaluations, and superior interview performance.")

### 2) Retaliatory failure to promote in July 2010[14]

Cunningham alleges that in June or early July 2010, he contacted Shakerin and

---

[14] Cunningham also argues that AutoZoners offered no reason for not promoting him to Gorum's PSM position when he left the store in May 2010. However, Cunningham testified that Matt Rowell was hired for that position in September 2010, that he had a lot of experience, and that he was not claiming that he was more qualified than Rowell, but instead only Gorum and Nelson (doc. 28-3, Cunningham Deposition, p. 153-154).

questioned why he had not been considered for one of the "jobs that had been open for management" (doc. 28-3, p. 92-93, Cunningham Deposition).[15] At that time, Gorum had left in May 2010 and Cunningham recalled that another employee, Guy, had also left the store. Shakerin spoke with Wachman about Cunningham's question and on July 19, 2010, Wachman interviewed Cunningham. At this point, their versions of what happened diverge. *See supra* Findings of Fact. Wachman testified that Cunningham was promoted to a full-time senior sales position but when Cunningham returned from vacation he told Rogers, his Store Manager, that he had changed his mind and did not want a full-time position. However, Cunningham asserts that he was not promoted but instead remained a part-time sales employee. He contends that Wachman offered to promote him to a full-time PSM after he completed training classes at a different store location, but Wachman never came through with the training, and thus, retaliated against him for the internal complaint of sexual harassment.

Accepting for purposes of summary judgment that Cunningham's version of the facts is true, AutoZoners' alleged retaliatory failure to promote occurred in July 2010, ten months after the October 2009 internal complaint. AutoZoners' alleged retaliatory action is too remote in time. Additionally, this happened two months before the October 2010 EEOC charge was filed. Therefore, Cunningham has failed to establish the requisite causal connection element of his *prima facie* case as to this claim. *See Walker*, 518 Fed. Appx. at 628 (". . . 'in the absence of other evidence tending to show causation,' a three-to-four month time gap between the protected conduct and the adverse employment action is insufficient to establish causation on its own."); *Coar*, 372 Fed. Appx. at 5 (holding that "even a three-month period between protected activity

---

[15] Cunningham also thought there was another open PSM position, but he did not know whether it was a full-time or part-time position (doc. 28-3, p. 92-93) ("I guess that's the one Thomas Guy had left from").

and an adverse employment action, standing alone, does not allow a reasonable inference of a causal relationship between the protected expression and the adverse action.") (internal quotations and citation omitted); *Thomas,* 336 Fed. Appx. at 915-916 ("Three and a half months [between the filing of an EEOC charge and the December promotion] is too long a delay to support a causation finding absent other evidence of retaliatory intent[.]").

### 3) Retaliatory failure to give Cunningham a raise in October 2009 until July 2010

Cunningham alleges that in August 2009, Madison told him that she and Wachman were happy with his work and that Wachman was going to give him a raise. Cunningham alleges that after he filed his internal complaint in October 2009, Wachman retaliated against him by not giving him the raise as promised. Cunningham argues that he received a raise only after he complained to Shakerin about not being promoted to a PSM position in July 2010. Cunningham also alleges that the raise he received in July 2010, was not part of his promotion to a full-time Senior Sales position, and was not the raise that Wachman promised, but instead was a raise that Rogers had promised when he became Store Manager after Madison stepped down.

Assuming for purpose of this motion for summary judgment that Cunningham has made his *prima facie* case as to this claim, the burden of production shifts to AutoZoners to articulate a legitimate, non-discriminatory reason for not giving him the raise as promised. AutoZoners does not dispute that Madison may have told Cunningham that Wachman was going to give him a raise. Instead, it argues that this is inadmissible hearsay because Madison had no authority as to the raise. However, The Court has determined that for purposes of summary judgment, it will presume that Madison had authority and therefore, her statement would be admissible under either Fed. R. Evid. 801(d)(2)(D), or as the admission of a party opponent.

AutoZoners asserts that Cunningham did not receive a raise because its employees do not

receive raises as quickly as two months after starting work and points out that Madison did not specify when Cunningham was to receive the raise that Wachman allegedly promised him (doc. 32, p. 11, n.7). AutoZoners argues that Cunningham failed to identify any employee who obtained a raise within the first year. In that regard, at deposition, Wachman testified that in the normal procedure employees are evaluated twice a year (doc. 28-4, p. 24). He also testified that when Cunningham was given a raise in July 2010, he was given an increase of 75 cents per hour "which is not typical of a yearly increase at AutoZone" (doc. 28-4, p. 27).[16] Thus, AutoZoners appears to give annual raises followed by two evaluations.

Cunningham must now rebut AutoZoners' legitimate non-discriminatory reason: That employees generally do not receive raises during the first year of their employment. The Supreme Court has recently held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *see also Perry v. Alabama Alcoholic Beverage Control Bd.*, - - - F. Supp. - - - , 2013 WL 5347403, *28 (M.D. Ala. Sept. 23, 2013) ("Recently, the Supreme Court has declared that the ultimate issue is whether the retaliation would not have occurred but for the protected conduct" and that "[e]ven if any of the alleged discrete actions of retaliation were sufficient to make out a prima facie case, they would not survive the 'but-for' test" based on the Supreme Court's clarification that the "level of causation" requires plaintiffs to show that the adverse employment action would not have occurred but for the plaintiff's

---

[16] The evidence indicates that Cunningham received two annual raises in October 2010 and October 2011 before he left work in May 2012.

involvement with protected activity"); *Shumate v. Selma City Bd. of Educ.*, 2013 WL 5758699 (S. D. Ala. Oct. 24, 2013) (slip copy) (applying the "but for" test at the third step of the *McDonnell Douglas* analysis and finding that "a reasonable jury could not conclude that Shumate would have gotten the job but for her protected conduct").

Thus, Cunningham must proffer sufficient evidence from which a reasonable jury could infer that he would have gotten the raise if he had not made the internal complaint of sexual harassment. However, the only evidence he has proffered is Madison's statement that Wachman was going to give him a raise. From this, he argues that he was eligible for the raise from the day Madison told him and that an inference can be raised that Wachman was going to give him the raise and not wait until a full-time position was open. However, the fact that the raise was not given until July 2010, approximately one year after Cunningham began to work for AutoZoners, is not evidence from which a jury could reasonably infer that Wachman retaliated against Cunningham for his protected activity. Thus, viewing the facts in the light most favorable to Cunningham and drawing all reasonable inferences therefrom, there is not sufficient evidence from which a reasonable jury could conclude that he was not given the raise because of his internal complaint against Madison. *Nassar,* 133 S. Ct. at 2528 ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.").

### 4) Retaliatory reduction of hours

Cunningham cannot establish his *prima facie* case that Rogers' alleged reduced scheduling of his part-time hours for three weeks in October after the first EEOC charge was filed was a materially adverse employment action or that it was causally connected to the

protected activity because his part-time hours varied throughout his entire employment.[17]

The undisputed evidence from AutoZoners' human resources records, shows that Cunningham's hours fluctuated during his entire employment and on several occasions were reduced in an amount comparable to the alleged retaliatory reduction by Rogers. As to the weeks for which he alleged his hours were reduced, Cunningham worked 14.55 hours the week of October 11, 2010, 13.33 hours for the week of October 19, 2010, and 9.26 hours for the week of October 26, 2010 (doc. 30-1, doc. 28-6, p. 7-8, Exhibit D, summary of hours). However, for the five weeks prior to the alleged reduction, Cunningham worked 15.56 hours the week of October 4, 2010, 17.03 hours the week of September 28, 2010, 6.46 for the week of September 20, 2010, 17.09 for the week of September 13, 2010, and 19.02 the week of September 7, 2010 (*Id.*). Looking farther back from August 2010 to June 2010, his hours ranged from 8.10 the week of June 7, 2010 to 25.50 the week of July 6, 2010 (*Id.*) (excluding the hours of 5.27 on July 19, 2010 which were scheduled contemporaneously with Cunningham's vacation) (*Id.*).

An overall review of the records shows that during 2010 Cunningham's hours routinely fluctuated such that the reduction following his filing the September 2010 EEOC charge had no materially adverse effect on Cunningham. *See Gupta*, 212 F.3d at 588 ("An action which, it turns out, had no effect on an employee is not an 'adverse' action."). Moreover, since Cunningham's

_____

[17] AutoZoners also argues that Cunningham has no evidence that the Store Managers after Rogers, who continued to provide a similar fluctuating schedule of hours, had knowledge of the protected activity. Cunningham does not dispute this argument. The evidence shows that after Rogers left the store, "Rick" and Eddie Kay were the Store Managers. Since Cunningham fails to point the Court to any evidence that they had knowledge of the 2010 EEOC charges or the 2009 sexual harassment complaint, the Court will address only the alleged retaliatory action taken by Rogers. *See Silvera v. Orange County School Bd.,* 244 F. 3d 1253, 1262 (11th Cir. 2001) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent."); *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997) ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression....").

hours routinely fluctuated in a similar manner, dropping as low as 6.46 the week of September 20, 2010 and 8.10 hours the week of June 7, 2010, before he filed the EEOC charge in September 2010, he cannot establish the requisite causal connection.[18]

### 5) The convincing mosaic analysis

Additionally, the *McDonnell-Douglas* "framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011). Thus Cunningham's retaliation claim may proceed to trial "if the record, viewed in a light most favorable to [him], presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (internal citations and footnote omitted); *see also Chapter 7 Trustee v. Gate Gourmet, Inc.,* 683 F.3d 1249, 1255-56 (11th Cir. 2012) (applying *Smith* in holding that an employee "d[id] not have to use the *McDonnell-Douglas* framework to survive summary judgment because the record contain[ed] enough non-comparator evidence for a jury to reasonably infer that [her supervisor] discriminated against [her] because she was pregnant").

An overall review of the facts, viewed in the light most favorable to Cunningham, shows that he has failed to present sufficient evidence to create a convincing mosaic of circumstantial evidence from which a jury could reasonably infer that AutoZoners retaliated against him for the internal complaint or for filing the EEOC charges. The record also indicates that Cunningham received a raise in July 2010; that despite the confusion regarding his promotion, AutoZoners' processed a change in status to a full-time senior sales associate position; that he was given

---

[18] To the extent that Cunningham relies on his belief that Rogers cut his hours because Rogers spoke with him about the EEOC charge, his unsupported belief is not sufficient to create a genuine issue of material fact.

favorable evaluations of his work performance and two more raises in October 2010 and October 2011; and was not terminated despite two disciplinary actions and his arrest for distribution of drugs.

### IV. Conclusion

Upon consideration of the evidence and for the reasons set forth herein, the Court finds that AutoZoners is entitled to judgment as a matter of law. *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (having resolved all issues of material fact in favor of the non-movant, the court must "then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts.") (citation omitted). Accordingly, the motion for summary judgment is **GRANTED**.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

DONE and ORDERED this the 13th day of November 2013.

s/  Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE